# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| COALITION FOR PARITY, INC., <br><br> Plaintiff, <br><br> v. <br><br> KATHLEEN SEBELIUS in her official capacity as Secretary, United States Department of Health and Human Services, *et al.*, <br><br> Defendants. | Civil No. 10-527 (CKK) |

**MEMORANDUM OPINION**
(April 1, 2010)

Plaintiff Coalition for Parity, Inc. has filed this action against the Secretaries of Health and Human Services, Labor, and Treasury, along with their respective Departments (collectively, "Defendants"), seeking to enjoin implementation of regulations promulgated to enforce the provisions of the Paul Wellstone and Pete Domenici Mental Health Parity and Addiction Equity Act of 2008 ("MHPAEA"), Pub. L. No. 110-343 §§ 512-13, 122 Stat. 3765, 3881 (codified in scattered sections United States Code titles 26, 29, and 42). Pursuant to the MHPAEA, Defendants are required to issue regulations to implement the Act's substantive provisions. *See* MHPAEA § 512(d). Defendants did so on February 2, 2010, publishing Interim Final Rules ("IFR") in the *Federal Register*. *See* Interim Final Rules Under the Paul Wellstone and Pete Domenici Mental Health Parity and Addiction Equity Act of 2008, 75 Fed. Reg. 5410 (Feb. 2, 2010). The Interim Final Rules are effective on April 5, 2010, and are generally applicable to group health plans and group health insurance issuers for plan years beginning on or after July 1,

2010. *See id.* at 5410.

Plaintiff filed the Complaint on April 1, 2010, the same date as this Memorandum Opinion. Together with the Complaint, Plaintiffs filed an [2] Application for Temporary Restraining Order ("TRO") and a [3] Motion for Preliminary Injunction. After Defendants were served with the Complaint, the Court asked Defendants to provide the Court with an opposition to the Application for TRO, and Plaintiff provided the Court with a brief in reply.[1] The Court held a hearing on the Application for TRO at 4:00 p.m., considering the parties' written submissions and oral arguments. For the reasons expressed on the record during the TRO hearing, as well as for the reasons stated below, the Court DENIED Plaintiff's Application for a Temporary Restraining Order.

## LEGAL STANDARD AND DISCUSSION

The standard for obtaining injunctive relief through either a temporary restraining order or a preliminary injunction is well established. A moving party must show: (1) a substantial likelihood of success on the merits, (2) that it would suffer irreparable injury if the injunction were not granted, (3) that an injunction would not substantially injure other interested parties, and (4) that the public interest would be furthered by the injunction. *Chaplaincy of Full Gospel Churches v. England*, 454 F.3d 290, 297 (D.C. Cir. 2006); *Hall v. Daschle*, 599 F. Supp. 2d 1, 6 n.2 (D.D.C. 2009) ("[t]he same standard applies to both temporary restraining orders and to preliminary injunctions"). In applying this four-factored standard, district courts may employ a sliding scale as to which a particularly strong showing in one area can compensate for weakness

---

[1] Because of the emergency nature of TRO proceedings, the Court asked the parties to submit their briefs directly to the Court via fax; however, the Court has directed the parties to file their briefs on the electronic docketing system to ensure a complete record.

in another. *Id.* (quoting *CityFed Fin. Corp. v. Office of Thrift Supervision*, 58 F.3d 738, 747 (D.C. Cir. 1995)). Nevertheless, both the United States Supreme Court and the Court of Appeals for the D.C. Circuit have emphasized that a plaintiff must show at least *some* likelihood of irreparable harm in the absence of an injunction. *See Winter v. Nat. Res. Def. Council, Inc.*, __ U.S. __ , 129 S. Ct. 365, 375 (2008) (holding that a plaintiff must "demonstrate that irreparable injury is *likely* in the absence of an injunction," and not a mere "possibility"); *CityFed*, 58 F.3d at 747 (holding that a plaintiff must demonstrate "'at least some injury' for a preliminary injunction to issue . . . [because] 'the basis of injunctive relief in federal courts has always been irreparable harm . . . .'" (quoting *Sampson v. Murray*, 415 U.S. 61, 88 (1974)).

    A.    *Irreparable Injury If the TRO Is Not Granted*

Plaintiff is a coalition of managed behavioral healthcare organizations ("MBHOs") who contract with managed care organizations or with employers and states to manage behavioral healthcare benefits on behalf of group health plans. *See* Pl.'s Mem. at 4. In their written submissions and at the TRO hearing, Plaintiff explained that it believes it will be irreparably injured because the Interim Final Rules impose substantive regulations that will directly impact MBHOs. However, the parties disagreed over whether the substantive provisions of the Interim Final Rules are binding on Plaintiff as the Rules' effective date, which is April 5, 2010, or the "applicability date," which is no earlier than July 1, 2010. Plaintiff agreed at the hearing that if the Interim Final Rules are not binding until July 1, 2010, there is no irreparable harm to justify a Temporary Restraining Order.

The Interim Final Rules have an "effective date" of April 5, 2010. *See* 75 Fed. Reg. 5410. At the hearing, Defendants asserted that all this means is that the Interim Final Rules will

be published in the *Code of Federal Regulations* on that date. Defendants argue that the plain language of the regulations indicates that none of their substantive provisions will apply prior to July 1, 2010. Paragraph (i) of the regulations[2] provides "the requirements of this section are applicable for plan years beginning on or after July 1, 2010."[3] *See* 75 Fed. Reg. 5437, 5444, 5451. Defendants stated on the record that the purpose of having an "effective date" in April 2010 was to give all affected parties a three-month period in which to get into compliance with the new regulations. Thus, Defendants stated on the record that Plaintiff has no obligations beginning April 5, 2010 with respect to the Interim Final Rules.

Plaintiff, however, argues that the "applicability date" of July 1, 2010, only extends to provisions that would be encompassed by an actual plan, and that there are substantive provisions in the Interim Final Rules that go into effect on April 5, 2010, such as the "nonquantitative treatment limitations" described at 75 Fed. Reg. 5443. However, the plain language of the Rules states that "the requirements of this section are applicable for plan years beginning on or after July 1, 2010." The Rules do not say that only some of the requirements are applicable on that date or that this section applies only to provisions that are incorporated in a plan. Therefore, the Court agrees with Defendants' reading of the Interim Final Rules and finds that they impose no obligations affecting Plaintiff immediately on April 5, 2010.

Plaintiff has also argued that although the government will not enforce the Interim Final Rules until July 1, 2010, private parties may enforce the Rules as of April 5, 2010, potentially

---

[2] There are three relevant regulations affected: 26 C.F.R. § 54.9812; 29 C.F.R. § 2590.712; 45 C.F.R. § 146.136.

[3] Paragraph (i) also provides that a different set of rules apply for collectively-bargained health plans, but in no event do regulations apply to plan years beginning before July 1, 2010.

4

opening MBHOs up to litigation. *See* Pl.'s Reply at 2. In support of this proposition, Plaintiffs rely on this paragraph from the IFR:

> Because the statutory MHPAEA provisions are self-implementing and are generally effective for plan years beginning after October 3, 2009, many commenters asked for a good faith compliance period from Departmental enforcement until plans (and health insurance issuers) have time to implement changes consistent with these regulations. For purposes of enforcement, the Departments will take into account good-faith efforts to comply with a reasonable interpretation of the statutory MHPAEA requirements with respect to a violation that occurs before the applicability date of paragraph (i) of these regulations. However, this does not prevent participants or beneficiaries from bringing a private action.

75 Fed. Reg. 5419. However, Defendants argue, and the Court agrees, that this paragraph is clearly referring to actions that may be brought under the statute itself, not actions that may be brought for violations of the Interim Final Rules. Because Plaintiff has asserted that its members are continuing to comply with the statutory requirements, this does not change the irreparable harm analysis.

Thus, because the Interim Final Rules will not have any substantive effect until July 1, 2010, the Court finds there is no irreparable harm to Plaintiff if the temporary restraining order is not granted.

  *B.*  *Standing*

During the TRO hearing, Defendants raised the question of whether Plaintiff has standing to challenge the Interim Final Rules since Plaintiff represents neither group health plans nor health insurance issuers, the two entities directly regulated by the Interim Final Rules. Defendants cited *Block v. Community Nutrition Institute*, 467 U.S. 340 (1984), as an example of a case in which a statutory or regulatory scheme limits the class of possible plaintiffs to those whose conduct is directly regulated. Thus, in *Community Nutrition Institute*, the Supreme Court

5

held that milk consumers lacked standing to challenge milk market orders because Congress intended causes of action to be limited to milk producers and handlers. *See* 467 U.S. at 347. Although the Court has not had the benefit of briefing on this issue, the Court finds at this preliminary stage that Plaintiff has standing to seek injunctive relief as a representative of parties who are in privity with group health plans or health insurance issuers directly regulated under the Interim Final Rules.

## CONCLUSION

For the reasons stated above, and for the reasons expressed on the record at the TRO hearing, the Court DENIED Plaintiff's [2] Application for Temporary Restraining Order. The parties agreed to establish an expedited briefing schedule to address the merits of Plaintiff's challenge to the Interim Final Rules. Accordingly, the Court shall enter a minute order with an expedited briefing schedule.

Date: April 1, 2010

/s/
**COLLEEN KOLLAR-KOTELLY**
United States District Judge