# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| COALITION FOR PARITY, INC.,<br><br>　　Plaintiff,<br><br>　　v.<br><br>KATHLEEN SEBELIUS in her official capacity as Secretary, United States Department of Health and Human Services, *et al.*,<br><br>　　Defendants. | Civil Action No. 10-527  (CKK) |

## MEMORANDUM OPINION
(June 21, 2010)

Plaintiff Coalition for Parity, Inc. ("Plaintiff" or the "Coalition") has filed this action against the Secretaries of Health and Human Services, Labor, and Treasury (the "Secretaries"), along with their respective Departments (collectively, "Defendants"), seeking to enjoin implementation of regulations promulgated to enforce the provisions of the Paul Wellstone and Pete Domenici Mental Health Parity and Addiction Equity Act of 2008 ("MHPAEA"), Pub. L. No. 110-343, Div. C §§ 511-12, 122 Stat. 3861, 3881 (codified in scattered sections United States Code titles 26, 29, and 42).  Pursuant to the MHPAEA, Defendants are required to issue regulations to implement the Act's substantive provisions.  Defendants did so on February 2, 2010, publishing Interim Final Rules ("IFR") in the *Federal Register*.  The Interim Final Rules became effective on April 5, 2010, and are generally applicable to group health plans and group health insurance issuers for plan years beginning on or after July 1, 2010.  Plaintiff claims that Defendants' promulgation of the Interim Final Rules violates the notice and comment

requirements of the Administrative Procedure Act ("APA"), 5 U.S.C. § 553.

Plaintiff filed the Complaint on April 1, 2010, together with an [2] Application for Temporary Restraining Order ("TRO") and a [3] Motion for Preliminary Injunction. The Court held a hearing on the request for temporary relief and issued a [5] Memorandum Opinion denying the application for a TRO because the Court found that the Interim Final Rules do not have substantive effect until July 1, 2010. In light of this upcoming deadline, the parties agreed that the Court should proceed directly to the merits of the case after an expedited briefing schedule. Pursuant to that schedule, on April 14, 2010, Plaintiff filed a [12] Motion for Summary Judgment, and on May 3, 2010, Defendants filed a [23] Motion to Dismiss or, in the Alternative, for Summary Judgment. The motions are now fully briefed and are ripe for decision. For the reasons expressed below, the Court shall DENY Plaintiff's Motion for Summary Judgment and GRANT Defendants' Motion to Dismiss or, in the Alternative, for Summary Judgment.

## I.  BACKGROUND

### A.  *Notice and Comment Procedures Under the Administrative Procedure Act*

The APA requires that federal agencies, prior to the promulgation of any regulation, publish in the *Federal Register* a general notice of proposed rulemaking that includes: (1) a statement of the time, place, and nature of public rulemaking proceedings; (2) reference to the legal authority under which the rule is proposed; and (3) either the terms or substance of the proposed rule or a description of the subjects and issues involved. 5 U.S.C. § 553(b). This requirement does not apply to "interpretive rules, general statements of policy, or rules of agency organization, procedure, or practice." *Id.* More importantly for this case, the APA's notice requirement also does not apply "when the agency for good cause finds (and incorporates the

finding and a brief statement of reasons therefor in the rules issued) that notice and public

procedure thereon are impracticable, unnecessary, or contrary to the public interest." *Id.* After

such notice is published, "the agency shall give interested persons an opportunity to participate in

the rule making through submission of written data, views, or arguments with or without

opportunity for oral presentation." *Id.* § 553(c). Agencies must consider the comments

presented and provide a "concise general statement" of the basis and purpose for the final rules.

*Id.* The notice requirements of § 553 "are designed (1) to ensure that agency regulations are

tested via exposure to diverse public comment, (2) to ensure fairness to affected parties, and (3)

to give affected parties an opportunity to develop evidence in the record to support their

objections to the rule and thereby enhance the quality of judicial review." *Int'l Union, United*

*Mine Workers of Am. v. Mine Safety & Health Admin.*, 407 F.3d 1250, 1259 (D.C. Cir. 2005).

      B.     *The Mental Health Parity and Addiction Equity Act*

      On October 3, 2008, Congress enacted the Paul Wellstone and Pete Domenici Mental

Health Parity and Addiction Equity Act of 2008 ("MHPAEA"), as sections 511 and 512 of the

Tax Extenders and Alternative Minimum Tax Relief Act of 2008. *See* Pub. L. No. 110-343, Div.

C §§ 511-12, 122 Stat. 3861, 3881 (Oct. 3, 2008). The MHPAEA amends the Employee

Retirement Income Security Act of 1974 ("ERISA"), the Public Health Service Act, and the

Internal Revenue Code, with parallel provisions. *See* 29 U.S.C. § 1185a; 42 U.S.C. § 300gg-5;

26 U.S.C. § 9812. The MHPAEA expands the scope of prior legislation, the Mental Health

Parity Act of 1996 ("MHPA"), Pub. L. No. 104-204, §§ 701-02, 110 Stat. 2874, 2944 (Sept. 26,

1996). The MHPA and the MHPAEA are designed to end discrimination in the provision of

coverage for mental health and substance use disorders as compared to medical and surgical

conditions in employer-sponsored group health plans and health insurance coverage offered in

connection with group health plans.  The MHPA requires parity in aggregate lifetime and annual

dollar limits for mental health benefits and medical and surgical benefits.  The MHPAEA goes

further than the MHPA and requires employer-sponsored group health plans to cover mental

illness and substance abuse on the same basis as physical conditions.  The MHPAEA does not

require employers to provide benefits for mental health or substance use disorders, but group

health plans with 50 or more employees that choose to provide mental health and substance use

disorder benefits must do so in parity with medical and surgical benefits.  Specifically, the

MHPAEA requires group health plans (or insurers) to ensure that the "financial requirements"

and "treatment limitations" that are applicable to mental health or substance use disorder benefits

are "no more restrictive" than the predominant financial requirements or treatment limitations

applied to substantially all medical and surgical benefits covered by the plan (or coverage).  *See*

29 U.S.C. § 1185a(a)(3); 42 U.S.C. § 300gg-5(a)(3); 26 U.S.C. § 9812(a)(3).  The MHPAEA

defines "financial requirements" as including "deductibles, copayments, coinsurance, and out-of-

pocket expenses" and defines "treatment limitations" as including "limits on the frequency of

treatment, number of visits, days of coverage, or other similar limits on the scope or duration of

treatment."  *Id.*

The MHPAEA went into effect one year after its enactment and is generally effective on a

rolling plan year basis for insurance plan years beginning after October 3, 2009.  Because most

group health insurance plan years begin on either January 1 or July 1, the MHPAEA's

substantive provisions affect most group health plans beginning on either January 1, 2010, or

July 1, 2010.  In § 512(d) of the MHPAEA, Congress called on Defendants to promulgate

regulations to implement the statute's substantive provisions:

> Not later than 1 year after the date of enactment of this Act, the Secretaries of Labor, Health and Human Services, and the Treasury shall issue regulations to carry out the amendments made by subsections (a), (b), and (c), respectively.

MHPAEA § 512(d).  Although the deadline for the promulgation of regulations is the same as the effective date of the statute, Congress explicitly provided that the statute's provisions go into effect "regardless of whether regulations have been issued to carry out" the MHPAEA.  *Id.* § 512(e).[1]

C.      *Defendants' Regulatory Process*

Shortly after the MHPAEA was enacted in October 2008, officials at the Departments of Health and Human Services, Labor, and Treasury began to discuss the promulgation of regulations to implement the statute.  *See* Defs.' Mot., Decl. of James A. Mayhew ("Mayhew Decl.") ¶¶ 1-3.  Due to the novel and complex issues raised by the MHPAEA, Defendants decided that they did not have sufficient information to develop a proposed regulation, and they determined to seek public input by issuing a request for information ("RFI") on the specific issues presented by the MHPAEA and its economic impact.  *Id.* ¶¶ 3-4.  Based on their experience with prior jointly-issued regulations, Defendants believed that it would take significantly longer than one year to issue an RFI with a comment period, review the comments, draft and issue a proposed rule with a comment period, and then draft and issue a final rule after reviewing comments on the proposed rule.  *Id.* ¶ 4.  Accordingly, Defendants chose to proceed with a practice used on several other jointly-issued regulations: issue an RFI followed by an

---

[1] The MHPAEA has a different effective date for collectively-bargained plans that was subsequently amended by Congress.  *See* Pub. L. No. 110-460, 122 Stat. 5123 (2008) (providing for an effective date of January 1, 2010).

interim final rule. *Id.* ¶ 3.

Although the drafting of the RFI was largely completed by the end of 2008, the Departments were not able to issue the RFI until April 28, 2009. *See* Mayhew Decl. ¶ 6. The approval and issuance of the RFI was delayed by the change in presidential administrations as new political appointees needed time to review and approve the proposed RFI. *Id.* The issuance of the RFI was also delayed by major legislative enactments that required the Departments' attention in early 2009. *Id.* ¶ 7. The RFI was published on April 28, 2009 in the *Federal Register*. *See* Request for Information Regarding the Paul Wellstone and Pete Domenici Mental Health Parity and Addiction Equity Act of 2008, 74 Fed. Reg. 19155 (Apr. 28, 2009). Among other things, the RFI sought information from commenters about the types of "financial requirements" and "treatment limitations" currently applied to medical and surgical benefits and mental health and substance use disorder benefits. *See id.* at 19157. The RFI also asked what terms or provisions in the MHPAEA require additional clarification to facilitate compliance. *Id.* The RFI requested that comments be submitted by May 28, 2009. *Id.* at 19155.

The Departments received over 400 comments in response to the RFI. *See* Defs.' Mot., Decl. of George Christopher Cosby ("Cosby Decl.") ¶ 2. Two of Plaintiff's member organizations, Magellan Health Services, Inc. ("Magellan") and ValueOptions, Inc. ("ValueOptions"), submitted comments in response to the RFI. *See id.* ¶¶ 2-3. The Departments also received comments from the Association for Behavioral Health and Wellness ("ABHW"), a group which includes all three of Plaintiff's member organizations. *Id.* ¶ 3. In their comments, these three commenters shared the view that the MHPAEA's language should be read to allow separate deductibles for medical/surgical benefits and mental health/substance use disorder

benefits.  *See* J.A. Ex. 1 (Comments of ValueOptions) at MHP 0000934; J.A. Ex. 2 (Comments of ABHW) at MHP 0001153, 0001155-56; J.A. Ex. 3 (Comments of Magellan) at MHP 0001335-36.  These commenters also expressed the view that the term "treatment limitation" should be construed as applying only to limitations that are temporally or durationally similar to limits on scope or duration of treatment.  *See* J.A. Ex. 1 at MHP 0000939, 0000945-46; J.A. Ex. 2 at MHP 0001158-59; Ex. 3 at MHP 0001338; *id.* at MHP 0001344 ("We do not believe it was the intent of the legislation to include, nor does the actual language support inclusion of, non-numerical or non-quantifiable limits like type of treatment as a 'similar limit on the scope or duration of treatment.'")  These are the same concerns expressed by Plaintiff in the pleadings in this case.  During September and October 2009, officials from the Department of Labor contacted ABHW, Magellan, and various other commenters to discuss their concerns about the implementation of the MHPAEA.  *Id.* ¶¶ 4-5.  On August 4, 2009, twenty-six United States Senators sent a letter to the Secretaries urging them to issue timely regulations to implement the MHPAEA.  *See* Mayhew Decl. ¶ 9 & Ex. A (Aug. 4, 2009 letter).  On September 23, 2009, the Secretaries received a similar letter signed by seventy-three members of the House of Representatives.  *See id.* ¶ 9 & Ex. B (Sept. 23, 2009 letter).  These letters acknowledged that an RFI had been issued with over 400 comments received.

The three Departments completed the drafting and clearance process for the Interim Final Rules ("IFR") in the fall of 2009.  *See* Mayhew Decl. ¶ 10.  The draft IFR was reviewed by the Office of Management and Budget between December 7, 2010, and January 27, 2010.  The Interim Final Rules were published in the *Federal Register* on February 2, 2010.  *See* Interim Final Rules Under the Paul Wellstone and Pete Domenici Mental Health Parity and Addiction

Equity Act of 2008, 75 Fed. Reg. 5410 (Feb. 2, 2010).  The Interim Final Rules became effective

on April 5, 2010, and are generally applicable to group health plans and group health insurance

issuers for plan years beginning on or after July 1, 2010.  *See id.* at 5410.  The IFR solicited

comments for a ninety-day period ending May 3, 2010.  *Id.*  The Departments have received over

four thousand comments since the publication of the IFR.  Mayhew Decl. ¶ 11.

In promulgating the Interim Final Rules, Defendants invoked the "good cause" exception

to § 553:

> These rules are being adopted on an interim final basis because the Secretaries have
> determined that without prompt guidance some members of the regulated community
> may not know what steps to take to comply with the requirements of the MHPAEA,
> which may result in an adverse impact on participants and beneficiaries with regard
> to their health benefits under group health plans and the protections provided under
> MHPAEA.    Moreover, MHPAEA's requirements will affect the regulated
> community in the immediate future.

75 Fed. Reg. 5419.  Defendants also relied on separate statutory authority for the issuance of

interim final rules to implement the provisions of the MHPAEA.  *See id.*

D.    *Plaintiff's Challenge to the Interim Final Rules*

Plaintiff Coalition for Parity, Inc. is comprised of three independent managed behavioral

healthcare organizations ("MBHOs") that are directly impacted by the IFR.[2]  These MBHOs

typically contract with managed care organizations or with employers and states to manage

behavioral healthcare benefits on behalf of a group health plan or the employer.  Plaintiff's

members manage only mental health and substance abuse benefits, not medical or surgical

---

[2] Although Plaintiff never explicitly identifies its members in its pleadings, it has not
disputed Defendants' assertion that Plaintiff comprises Magellan, ValueOptions, and Beacon
Health Strategies, LLC ("Beacon").  *See* Defs.' Stmt. of Undisputed Material Facts ¶ 24 & Pl.'s
Response to Defs.' Stmt. of Undisputed Material Facts.

benefits.  As such, they have concerns about some of the substantive requirements in the Interim

Final Rules.  Plaintiff's principal concern about the substance of the Interim Final Rules is the

requirement that parity be achieved for "nonquantitative limitations" on treatment.  *See* 75 Fed.

Reg. 5443.  Plaintiff is also concerned about the requirement in the IFR that health plans

maintain a single deductible for medical/surgical and behavioral health benefits.  *Id.* at 5442.

Plaintiff asserts that these regulations significantly expand the reach of the MHPAEA and have a

substantial impact on Plaintiff's members because they threaten longstanding practices by

MBHOs.  Plaintiff argues that if Defendants had followed the notice and comment procedures

required by the APA, it could have explained these perceived problems to the Departments.

On April 1, 2010, Plaintiff filed its Complaint alleging that Defendants' promulgation of

the Interim Final Rules violated the notice and comment requirements of § 553.  Plaintiff does

not challenge the substance of the Interim Final Rules.  Because of the IFR's "effective date" of

April 5, 2010, Plaintiff immediately moved for a temporary restraining order ("TRO") and a

preliminary injunction to prevent Defendants from enforcing the IFR.  After a hearing, the Court

denied Plaintiff's request for emergency relief, finding that the IFR's "effective date" had no

practical effect because the substance of the IFR does not take effect until July 1, 2010.  The

parties subsequently agreed to file briefs on the merits of Plaintiff's claim on an expedited basis.

## II.  LEGAL STANDARD

The parties have filed cross motions for summary judgment pursuant to Federal Rule of

Civil Procedure 56.[3]  Summary judgment is proper when "the pleadings, the discovery [if any]

---

[3] Because the Court considers the entire administrative record and the parties' supporting
declarations, the Court shall treat Defendants' alternative motion to dismiss as a motion for
summary judgment.

and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Under the summary judgment standard, the moving party bears the "initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (internal quotation marks omitted). In response, the non-moving party must "go beyond the pleadings and by [its] own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Id.* at 324 (internal quotation marks omitted). All underlying facts and inferences are analyzed in the light most favorable to the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986).

Whether an agency has complied with the APA's notice and comment requirements is a question of law for the court. *Sequoia Orange Co. v. Yeutter*, 973 F.2d 752, 757 n.4 (9th Cir. 1992). "[I]n APA review cases, whether agency action was contrary to law is a legal issue that a Court resolves on the basis of the administrative record." *Nat'l Women, Infants, & Children Grocers Ass'n v. Food & Nutrition Serv.*, 416 F. Supp. 2d 92, 97 (D.D.C. 2006); *see also Am. Bioscience, Inc. v. Thompson*, 269 F.3d 1077, 1083 (D.C. Cir. 2001) ("[W]hen a party seeks review of agency action under the APA, the district judge sits as an appellate tribunal.") Where there are no disputed facts and review is based solely on the administrative record, summary judgment is appropriate for the party entitled to judgment as a matter of law. *Young v. Gen. Servs. Admin.*, 99 F. Supp. 2d 59, 65 (D.D.C.), *aff'd*, 11 F. App'x 3 (D.C. Cir. 2000). If the

10

administrative record alone does not disclose the basis for agency action, the court may accept

agency affidavits providing "such additional explanation of the reasons for the agency decision as

may prove necessary." *Camp v. Pitts*, 411 U.S. 138, 143 (1973); *Citizens to Preserve Overton*

*Park, Inc. v. Volpe*, 401 U.S. 402, 420 (1971).  However, this limited exception "may not be

employed to offer post-hoc rationalizations . . . . [N]ew material should be merely explanatory of

the original record and should contain no new rationalizations." *AT&T Information Systems, Inc.*

*v. General Servs. Admin.*, 810 F.2d 1233, 1236 (D.C. Cir. 1987) (quotation marks and citations

omitted).

### III.  DISCUSSION

Plaintiff claims that Defendants promulgated the Interim Final Rules without notice and

comment in violation of the Administrative Procedure Act, 5 U.S.C. § 553.  Defendants do not

dispute that they did not provide notice of the IFR, but they assert three alternative arguments as

to why their promulgation of the IFR was proper.  First, they contend that the notice and

comment requirements of § 553 do not apply because Defendants have express statutory

authority to issue interim final rules relating to the MHPAEA.  Second, they argue that they

satisfied § 553's "good cause" exception to notice-and-comment rulemaking.  Third, they argue

that even if there was a violation of § 553, it was harmless error because Plaintiff had an

opportunity to comment in response to the Request for Information that led to the issuance of the

IFR.  The Court shall discuss these arguments below.

A.    *Statutory Authority for the Interim Final Rule*s

Defendants's first argument is that Congress, in authorizing Defendants to promulgate

interim final rules to carry out the provisions of the MHPAEA, expressed a clear intent that the

notice and comment procedures of § 553 need not be followed.  Plaintiff points out that in this

case, the statutory authority to promulgate interim final rules actually comes not from the

MHPAEA but from the Health Insurance Portability and Accountability Act of 1996 ("HIPAA"),

Pub. L. No. 104-191, §§ 101, 102, 401, 110 Stat. 1936, 1951, 1976, 2082 (1996), which

incorporated three substantially identical provisions into ERISA, the Internal Revenue Code, and

the Public Health Service Act:

> The Secretary, consistent with section 104 of the Health Care Portability and
> Accountability Act of 1996, may promulgate such regulations as may be necessary
> or appropriate to carry out the provisions of this [part].  The Secretary may
> promulgate any interim final rules as the Secretary determines are appropriate to
> carry out this [part].

29 U.S.C. § 1191c, 26 U.S.C. § 9833 (replacing "part" with "chapter"), and 42 U.S.C. § 300gg-

92 (replacing "part" with "subchapter").[4]  Plaintiff argues that Congress only intended to give the

Secretaries authority to promulgate interim final rules relating to HIPAA and not the MHPAEA,

which was passed twelve years later.  However, the MHPAEA's substantive provisions are

amendments to the same sections of ERISA, the Internal Revenue Code, and the Public Health

Service Act that are governed by the HIPAA provisions cited above, and the statutory text clearly

gives the Secretaries authority to promulgate interim final rules to carry out these sections.

Therefore, the Court finds that Congress has authorized the Secretaries to "promulgate any

interim final rules as the[y] determine[] are appropriate to carry out the" MHPAEA.

Finding that Congress authorized the promulgation of interim final rules does not end the

inquiry.  Although the APA recognizes that Congress may modify the notice and comment

---

[4] This regulatory authority covers part 7 of Subtitle B of Title I of ERISA (29 U.S.C. §§
1181-91c), Chapter 100 of the Internal Revenue Code (26 U.S.C. §§ 9801-33), and Part A of
Title XXVII of the Public Health Service Act (42 U.S.C. §§ 300gg to 300gg-92).

procedures called for by § 553, it states that a "[s]ubsequent statute may not be held to supersede or modify [§ 553] . . . except to the extent that it does so expressly." 5 U.S.C. § 559. "[T]he import of the § 559 instruction is that Congress's *intent to make a substantive change* be clear." *Ass'n of Data Processing Serv. Orgs., Inc. v. Bd. of Governors*, 745 F.2d 677, 686 (D.C. Cir. 1986). The statutory provisions authorizing interim final rules in this case do not mention notice and comment or any other aspect of the APA. In such a case, the D.C. Circuit has defined the relevant standard as "whether Congress has established procedures so clearly different from those required by the APA that it must have intended to displace the norm." *Asiana Airlines v. FAA*, 134 F.3d 393, 397 (D.C. Cir. 1998).

Defendants rely on two cases in which the D.C. Circuit held that the notice and comment provisions of § 553 were abrogated by specific statutory provisions authorizing interim final rules. *See Asiana Airlines v. Fed. Aviation Admin.*, 134 F.3d 393 (D.C. Cir. 1998); *Methodist Hosp. of Sacramento v. Shalala*, 38 F.3d 1225 (D.C. Cir. 1994). In *Methodist Hospital of Sacramento*, the court was faced with statutory language directing the Secretary of Health and Human Services to publish interim final rules within five months of the statute's effective date, allow for a period of public comment on the interim rules, and publish final rules four months later. *See* 38 F.3d at 1236. The court found that the strict deadlines in the statute reflected Congress's "clear intent that APA notice and comment procedures not be followed." *Id.* at 1237.[5] In *Asiana Airlines*, the court was faced with a statute regulating certain flights over the

---

[5] The *Methodist Hospital* court also relied on the "good cause" exception to § 553 as a basis for affirming the agency's action, but the D.C. Circuit later explained that the *Methodist Hospital* decision could have relied solely on the language in the statute. *Asiana Airlines*, 134 F.3d at 397-98.

United States in which the Federal Aviation Administration was directed to publish "an initial fee schedule and associated collection process as an interim final rule, pursuant to which public comment will be sought and a final rule issued." 134 F.3d at 398. Based on this language and legislative history indicating that Congress intended the FAA to act as quickly as possible, the court concluded that the statute's procedures "cannot be reconciled with the notice and comment requirements of § 553." *Id.*

The statutory directives at issue in *Methodist Hospital* and *Asiana Airlines* are dissimilar from the provisions in HIPAA authorizing the Secretaries to issue interim final rules for the MHPAEA. In both *Methodist Hospital* and *Asiana Airlines*, the statutory language was mandatory and directed at a specific rulemaking procedure that Congress clearly wanted to occur expeditiously. By contrast, the HIPAA provisions are permissive ("The Secretary *may* promulgate any interim final rules as the Secretary determines are appropriate . . ."), wide-ranging (applying to any regulatory proceeding relating to group health insurance plans), and do not contain any specific deadlines for agency action. The one-year deadline imposed by the MHPAEA—which is legislatively separate from the grant of interim final rulemaking authority—is not so short a period that it cannot be reconciled with the APA's notice and comment procedures. Even if it were, the D.C. Circuit has held that "[s]tatutory language imposing strict deadlines, *standing alone*, does not constitute sufficient good cause under § 553 or an express modification pursuant to § 559 justifying departure from standard notice and comment." *Asiana Airlines*, 134 F.3d at 398.

Defendants argue that Congress must have intended to displace the APA's normal procedures because otherwise the grant of interim final rulemaking authority is meaningless.

14

Defendants rely on the familiar canon of statutory construction that a statute "should be construed so that effect is given to all its provisions, so that no part will be inoperative or superfluous, void or insignificant." *See Corley v. United States*, ___ U.S. ___, 129 S. Ct. 1558, 1566 (2009). However, the grant of interim final rulemaking authority is not susceptible to only one construction. The statute may be read to require that interim final rules be promulgated either with notice and comment or with "good cause" to forego notice and comment. Indeed, Defendants explicitly stated in the IFR that they were promulgating the IFR without notice and comment pursuant to the "good cause" exception in § 553. Therefore, the Court shall analyze Defendants' action in that context rather than relying solely on the authorization for interim final rulemaking provided by HIPAA.

B.     The "Good Cause" Exception

The APA explicitly states that an agency may waive the notice and comment procedure "when the agency for good cause finds (and incorporates the finding and brief statement of reasons therefor in the rules issued) that notice and public procedure thereon are impracticable, unnecessary, or contrary to the public interest." 5 U.S.C. § 553(b). "Generally, the 'good cause' exception to notice and comment rulemaking is to be 'narrowly construed and only reluctantly countenanced.'" *Jifry v. FAA*, 370 F.3d 1174, 1179 (D.C. Cir. 2004) (internal citations omitted). Therefore, courts must carefully scrutinize the agency's justification for invoking the "good cause" exception. *See Mid-Tex Elec. Co-Op., Inc. v. FERC*, 822 F.2d 1123, 1132 (D.C. Cir. 1987) ("[O]ur inquiry should be a close one."); *Council of S. Mountains, Inc. v. Donovan*, 653 F.2d 573, 580 (D.C. Cir. 1981) ("[C]ircumstances justifying reliance on this exception are 'indeed rare' and will be accepted only after the court has 'examine(d) closely proffered

rationales justifying the elimination of public procedures.'" (quoting *Am. Fed'n of Gov't Employees v. Block*, 655 F.2d 1153, 1157 n.6 (D.C. Cir. 1981)).  "[T]he 'good cause' inquiry is inevitably fact- or context-dependent."  *Mid-Tex Elec. Co-Op.*, 822 F.2d at 1132.

The courts within this Circuit have found "good cause" in many different contexts.  In *Petry v. Block*, 737 F.2d 1193 (D.C. Cir. 1984), the D.C. Circuit upheld the Secretary of Agriculture's decision to issue an interim rule based on the complexity of the statute to be implemented and the short time frame allowed by the statute for issuing implementing regulations before the effective date.  *See* 737 F.2d at 1200-01.  In *Mid-Tex Electric Cooperative, Inc. v. FERC*, 822 F.2d 1123 (D.C. Cir. 1987), the D.C. Circuit found that the agency had "good cause" based on the interim nature of the challenged rule, the agency's ongoing procedures to devise a final rule, and the regulated industry's need for some regulation to be in place to avoid regulatory confusion.  *See* 822 F.2d at 1132-34.  In *Methodist Hospital*, the court found that there was "good cause" based on the complexity of the regulatory framework and the statutory language directing the agency to issue interim final rules in an expedited time frame.  *See* 38 F.3d at 1237.  And in *National Women, Infants & Children Grocers Association v. Food and Nutrition Service*, 416 F. Supp. 2d 92 (D.D.C. 2006) ("*National WIC Grocers Ass'n*"), the court found there was "good cause" based on four factors: (1) congressional authorization for the issuance of interim final rules; (2) the difficulty in promulgating final rules with notice and comment prior to the effective date of the statute; (3) the affected community's need for regulatory guidance; and (4) the interim nature of the rule.  *See* 416 F. Supp. 2d at 105-08.

In this case, the fact that Congress has specifically authorized the Secretaries to promulgate interim final rules provides support towards a finding of "good cause" to proceed

without notice and comment.  Although the Court is not persuaded that the authority provided by

HIPAA expresses clear congressional intent to abandon notice and comment, "it is significant

that Congress authorized the issuance of an interim rule." *Nat'l WIC Grocers Ass'n*, 416 F.

Supp. 2d at 105.  As with the statute in *Nat'l WIC Grocers Ass'n*, Congress used permissive

language to confer discretion on the agencies to promulgate *any* interim final rules the Secretaries

determine are appropriate.  *See id.*  "When a statute uses a permissive term such as 'may' rather

than a mandatory term such as 'shall,' this choice of language suggests that Congress intends to

confer some discretion on the agency, and that courts should accordingly show *deference* to the

agency's determination." *Dickson v. Sec'y of Defense*, 68 F.3d 1396, 1401 (D.C. Cir. 1995).

Because Congress has expressly said that the Secretaries may exercise their judgment in deciding

whether interim final rules may be appropriate to implement statutory provisions such as the

MHPAEA, the Court should consider this as a factor in determining whether Defendants had

"good cause" to issue the IFR.

  Another factor to be considered is the regulated industry's need for guidance in light of

the effective date of the MHPAEA.  Defendants invoke this as their primary rationale for

foregoing notice and comment, finding that "without prompt guidance some members of the

regulated community may not know what steps to take to comply with the requirements of the

MHPAEA . . . ." 75 Fed. Reg. 5419.  An agency's desire to provide immediate guidance does

not, by itself, constitute "good cause" to avoid notice and comment procedures.  *Nat'l WIC

Grocers Ass'n*, 416 F. Supp. 2d at 107; *see also Mobil Oil Corp. v. Dep't of Energy*, 610 F.2d

796, 803 (Temp. Emer. Ct. App. 1979) ("[I]f the conclusory statement that normal procedures

were not followed because of the need to provide immediate guidance and information

constitutes good cause, then an exception to the notice requirement would be created that would swallow the rule." (quotation marks and citation omitted)).  However, courts within this Circuit have considered the need for regulatory guidance as one factor in assessing whether an agency has "good cause" to forego notice and comment.  For example, in *National WIC Grocers Ass'n*, the court agreed that there was a "compelling need" to have an interim rule in effect before the effective date of statutory changes to a federal grant-in-aid program so that states would have guidance from the agency responsible for implementing the statute as to how they can continue to receive millions of dollars in federal funding.  416 F. Supp. 2d at 107; *see also Mid-Tex Elec. Co-op.*, 822 F.2d at 1132-33 (citing concerns about "regulatory confusion" in the absence of an interim rule).

Plaintiff argues that Defendants' "prompt guidance" rationale is unauthentic.  Plaintiff points to the declaration of James A. Mayhew, Director of the Division of Private Health Insurance at the Centers for Medicare and Medicaid Services in HHS, who indicates that during the first month after the MHPAEA was enacted, he and the staff members from the three Departments "decided to proceed on the assumption that the Departments would follow the practice used on several other jointly-issued regulations and issue a request for information (RFI) followed by an interim final rule."  *See* Mayhew Decl. ¶ 3.  Mr. Mayhew goes on to explain that "[b]ased on the fact that there was an urgent need for regulatory guidance, we also believed that there was good cause to issue an interim final rule and that notice and public comment thereon would be impracticable, unnecessary and contrary to the public interest."  *Id.*  Plaintiff argues that this declaration shows that Defendants made the decision to abandon notice and comment procedures immediately without any input from the affected community.  But Plaintiff fails to

18

explain how the timing of Defendants' decision to proceed with an interim final rule undermines their rationale for doing so.  When the MHPAEA was enacted, it gave Defendants a one-year deadline to issue implementing regulations, and the statute was to go into effect in one year regardless of whether Defendants had issued regulations by that time.  *See* MHPAEA § 512(d)-(e).  Because of the novel and complex issues presented by the MHPAEA, Defendants believed it would be important to solicit information from the public before developing proposed rules to implement the statute.  *See* Mayhew Decl. ¶ 4.  Based on their experience with prior rulemakings coordinated between the three Departments, Defendants realized that it would take significantly longer than one year to issue a request for information with a comment period, review the comments, draft and issue proposed final rules with a comment period, and then draft final rules based on the comments to the proposed rules.  *See id.*  Therefore, there was a serious risk that the MHPAEA would go into effect without regulatory guidance for the affected industry.  Indeed, this ultimately occurred even despite the expedited procedures because of delays associated with the change in presidential administrations.  *See id.* ¶¶ 6-7.  Thus, the statutory deadlines imposed by Congress created the need for prompt guidance, and combined with other factors, this can support a finding of "good cause."[6]

Plaintiff argues that the need for prompt guidance is overstated because the regulated

---

[6] Plaintiff also argues that the fact that Defendants "cut and pasted" language from an earlier regulation in invoking the "good cause" exception demonstrates a lack of "good cause." However, there is nothing wrong with an agency's decision to reuse previously crafted language as long as the rationale behind the language still exists.  Defendants note that they have previously faced situations in which the need for immediate guidance prompted them to issue interim final rules pursuant to statutory authority and § 553's "good cause" exception.  The propriety of those previous invocations of the exception is not before the Court, and the fact that Defendants have previously issued interim final rules does affect the propriety of the action contested in this case.

community was already complying with the MHPAEA by the time the Interim Final Rules were finally issued in February 2010.  However, Plaintiff acknowledges that "there is legitimate debate within the industry over how best to implement the MHPAEA," Pl.'s Opp'n to Mot. of the Parity Implementation Coalition for Leave to File *Amicus Curiae* Brief in Supp. of Def. at 3, and there is evidence in the administrative record that supports Defendants' conclusion that regulatory guidance was important for the industry.  For example, in comments submitted in response to the Request for Information, both ValueOptions and Magellan, managed behavioral healthcare organizations who are members of the Coalition for Parity, indicated that "there are a number of areas where further clarity regarding the application of parity within the bounds of the legislative language would be of assistance to all stakeholders."  *See* J.A. Ex. 1 (Comments of ValueOptions) at MHP 0000940; *id.* Ex. 3 (Comments of Magellan) at MHP 0001340.  With respect to the language in the MHPAEA regarding cost-sharing requirements, ValueOptions and Magellan wrote that "[t]he language of the section, as currently written, cannot be fully and clearly interpreted and applied absent clarifying regulations specifically defining 'cost-sharing requirements.'"  *Id.* Ex. 2 at MHP 0000945; *id.* Ex. 3 at MHP 0001343.  Comments submitted by Magellan included complaints that the MHPAEA's language regarding financial requirements was "ambiguous" and subject to "[c]ontradictory interpretations."  J.A. Ex. 3 at MHP 0001335-36.  These comments from the affected industry and Plaintiff's member organizations support Defendants' conclusion that regulatory guidance was necessary to ensure effective compliance with the MHPAEA once it became effective in October 2009.

The need for prompt regulatory guidance is also reflected by the letters signed by members of Congress urging the Secretaries to promulgate implementing regulations.  These

letters were sent after the RFI had been issued and made explicit reference to the comments that

had been filed in response to the RFI.  In the letter dated August 4, 2009, twenty-six senators

wrote that "[w]ithout timely issuance of regulations that clarify Congressional intent, it is likely

that health plans will implement the law according to their proposed version of regulations as set

forth in their public comments."  *See* Mayhew Decl., Ex. A (Aug. 4, 2009 letter) at 2.  They

wrote that "to avoid misrepresentation of the law and to ensure access to these critical services, it

is imperative that you not only issue regulations according to clear Congressional intent but also

address concerns submitted during the public comment period."  *Id.* at 1.  On September 23,

2009, seventy-three representatives signed a letter stating, "The wide range of comments

received make clear the need for specific and timely direction from the agencies to ensure that

our citizens receive the mental health and substance use disorder services for which we fought."

Mayhew Decl., Ex. B (Sept. 23, 2009 letter) at 1.  While these post-enactment letters from

congressional sponsors are not conclusive expressions of legislative intent, they nevertheless

provide support for Defendants' conclusion that urgent regulatory guidance was necessary to

ensure uniform compliance with the MHPAEA's mandates.

Another factor to be considered by the Court is the temporary nature of the Interim Final

Rules.  In *Mid-Tex*, the court explained that "a rule's temporally-limited scope is among the key

considerations in evaluating an agency's 'good cause' claim," although "the agency must

convince [the court] . . . that it is not engaging in dilatory tactics during the interim period."  822

F.2d at 1132; *see also Nat'l WIC Grocers Ass'n*, 416 F. Supp. 2d at 107 ("The interim nature of a

challenged rule is a 'significant factor' in evaluating an agency's good cause claim.")  The

Interim Final Rules in this case became effective on April 5, 2010, and they apply to group health

plans and group health insurance issuers for plan years beginning on or after July 1, 2010. Defendants also solicited comments on the Interim Final Rules for three months (until May 3, 2010), which they intend to consider in developing final rules. *See* Mayhew Decl. ¶ 11. Although Defendants have not provided the Court with a schedule for promulgating final rules, the continued solicitation of comments after promulgation of the Interim Final Rules suggests that Defendants have kept an open mind as to the impact of its rules on the regulated community. *See Univ. Health Servs. of McAllen, Inc. v. Sullivan*, 770 F. Supp. 704, 721 (D.D.C. 1991) ("Although post-promulgation opportunity for comment is not a substitute for pre-promulgation notice and comment, failure to comply with the pre-promulgation procedures of § 553 of the APA may 'be cured by an adequate later notice' if 'the agency's mind remain[s] open enough at the later stage.'" (quoting *McLouth Steel Prods. Corp. v. Thomas*, 838 F.2d 1317, 1323 (D.C. Cir. 1988)). The Court expects that Defendants will work diligently and expeditiously to propose final rules based on the comments that have been received in response to the Interim Final Rules, and there is no evidence in the record that suggests Defendants will be dilatory in their efforts.

The record in this case shows that Defendants have worked at a reasonable pace to prepare final rules to carry out the statutory mandates of the MHPAEA. Although Plaintiff argues that Defendants "did nothing for six months" after the MHPAEA was enacted, *see* Pl.'s Mem. at 9, the declaration of James Mayhew indicates that the Departments began working on regulations within weeks of the MHPAEA's passage in October 2008, and publication of the Request for Information was delayed by the change in presidential administrations and other major legislative enactments requiring the attention of the Departments in early 2009. *See*

Mayhew Decl. ¶¶ 2-7.[7]  Following the publication of the RFI in late April 2009, the Departments

reviewed over 400 comments and had telephone conferences with representatives from various

commenters, including Beacon Health Strategies and Magellan.  *See* Crosby Decl. ¶¶ 2-5.  After

reviewing all of the comments received, the Departments completed the drafting and clearance

process in December 2009 and submitted the IFR to the Office of Management and Budget for

review.  Mayhew Decl. ¶ 10.  The Interim Final Rules were published on February 2, 2010, and

the comment period ended on May 3, 2010.  *Id.* ¶ 11.  Defendants have received over four

thousand comments since the publication of the IFR.  *Id.*  Although it is often the case that

administrative agencies do not move as swiftly as the public desires, courts within this Circuit

have long recognized that the rulemaking process is necessarily slow, deliberate, and fraught with

delays.  *See, e.g.*, *Petry*, 737 F.2d at 1201-02 (discussing the length of time required for agencies

to allow for comments, review comments, redraft the proposed rules in response, wait for review

by OMB, and provide notice of final rules before their effective date).  In light of the novel issues

raised by the MHPAEA and the coordination required by the Departments, the Court finds no

evidence of dilatoriness to undermine a finding of "good cause."

---

[7] Plaintiff argues that because Defendants relied exclusively on the "prompt guidance" rationale in the IFR, the Court should disregard evidence of Defendants' diligence as a *post hoc* rationalization for agency action.  *See* Pl.'s Reply at 15-17.  However, Defendants are not arguing that their diligence provided them with "good cause"; they merely seek to rebut Plaintiff's assertion that prompt guidance could have been provided without resorting to the use of interim final rulemaking authority.  Moreover, courts within this Circuit have consistently relied on agency declarations to explain their working processes when evaluating an agency's "good cause" claim.  *See Jifry*, 370 F.3d at 1179-82 (citing agency declaration explaining emergency basis for promulgating rules without notice and comment); *Petry*, 737 F.2d at 1201 (citing agency declaration for evidence that the agency had limited time in which to issue regulations); *Nat'l WIC Grocers Ass'n*, 416 F. Supp. 2d at 107 & n.6 (relying on agency declarations to show that the agency "has not been dilatory in promulgating the interim final rule").

In conclusion, based on the totality of the circumstances surrounding Defendants'
promulgation of Interim Final Rules to implement the MHPAEA, the Court finds that Defendants
properly invoked the "good cause" exception to the notice and comment requirements of § 553.
The Court reaches this conclusion based on the congressional authorization for the issuance of
interim final rules, the need for prompt regulatory guidance, the interim nature of the IFR, and
the lack of evidence of dilatoriness by Defendants.  Although none of these factors independently
provides the Defendants with "good cause," collectively they demonstrate that in this case,
"notice and public procedure thereon are impracticable, unnecessary, or contrary to the public
interest."  5 U.S.C. § 553(b)(B).

     *C.*     *Harmless Error*

Defendants argue in the alternative that even if there was a violation of the APA, Plaintiff
cannot prove that the agencies' error was harmful.  "In most APA cases, the burden falls on the
party asserting error to demonstrate prejudice from the error."  *AFL-CIO v. Chao*, 496 F. Supp.
76, 89 (D.D.C. 2007) (quotation marks and citations omitted).  Here, Defendants argue that
because the Coalition's members submitted comments in response to the RFI, they had an
adequate opportunity to comment on the substance of the Interim Final Rules.  Plaintiff
vigorously disputes this, arguing that the RFI did not provide adequate notice that the IFR would
extend to "nonquantitative" treatment limitations.  Plaintiff also argues that the Court should
presume harm when an agency fails to provide notice and comment under § 553.  *See Sugar
Cane Growers Coop. of Fla. v. Veneman*, 289 F.3d 89, 96 (D.C. Cir. 2002) ("[A]n utter failure to
comply with notice and comment cannot be considered harmless if there is any uncertainty at all
as to the effect of that failure.")

Although the parties have discussed this issue in their briefs, the Court finds that the present record does not provide a sufficient basis for making a ruling on this question.  For example, the administrative record presented to the Court does not include the comments that have been submitted in response to the IFR (which were being submitted during the pendency of this action), and those comments could be important in determining the harm to the Coalition. Therefore, because the Court has ruled that Defendants had "good cause" to forego notice and comment, the Court declines to reach Defendants' alternative argument that any violation of § 553 was harmless error.

## IV.  CONCLUSION

For the foregoing reasons, the Court shall DENY Plaintiff's [12] Motion for Summary Judgment and GRANT Defendants' [23] Motion to Dismiss or, in the Alternative, for Summary Judgment.  This case shall be dismissed.  An appropriate Order accompanies this Memorandum Opinion.

Date: June 21, 2010                                   _____/s/_____
                                                      **COLLEEN KOLLAR-KOTELLY**
                                                      United States District Judge